This is a failure to engage in the Interactive Process Rehabilitation Act case and a Whistleblower Protection Act case under Rule 56, in which there are many disputed issues of fact. There's also an issue about the timing in the retaliation aspect of the disability rights case. But I want to focus on the most troubling ruling by the district court, which involves 26 U.S. Code 6103. The Merit Systems Protection Board judge, Administrative Judge Reed, issued a decision which was affirmed by the district court, which creates a new defense, which is not supported in any of the Merit Systems Protection Board cases or the district court or the Court of Appeals laws, rulings on the Civil Service Reform Act, and it's extremely significant. The new defense to whistleblowers, which was created sui sponte by the Administrative Judge during the hearing after the New York Times wrote about the case, was that you lose your Whistleblower Protection Act protections by talking to the press, in this case the New York Times and the San Jose Mercury News. Now, the IRS, indeed, does have disclosure rules which protect taxpayers' private information from being disclosed by IRS employees. But it's not just talking to the press. Isn't it disclosing the name of the taxpayer? Right. And there's no evidence that that was ever done in this case. There was no – if that had been done, I'm sure the IRS would have investigated that before the hearing and charged Mr. Coons with that very serious violation of the Federal law. It's a criminal provision. The facts in this record are that Mr. Coons talked about his retaliation to the San Jose Mercury in May 1999 and to the New York Times in June 1999. The New York Times said that Coons then, under FOIA, received a copy of the entire Merit Systems Protection Board record and they attended the MSPB hearing. They wrote an article about his retaliation. They looked up the substance of his disclosures through public record. And the public record we referred to includes U.S. News and World Report stories about the looting that was going on involving Taxpayer A, which is a Russian diamond company that moved to San Francisco in the mid-'90s. The issue was whether or not David K. Johnson's articles about the IRS were garnered information from Mr. Coons, that Mr. Coons disclosed private information of taxpayers, namely the names of taxpayers. He did not do so. The record is quite clear that Mr. Coons explained he only raised in his whistleblower complaint issues which could be found in the public record. He went to the court records and, on my instruction when I first met with him and, in fact, my statement is in the record because I was questioned about this, stated that all of the information provided to me was information I could have found myself in court records. The concern here is that the whistleblowers who are trying to raise their unlawful treatment in retaliation not be precluded from raising those issues publicly. These MSPB hearings are public hearings, and we were very careful during the MSPB hearing, and most of the witness followed the recommendation or ruling of the administrative judge not to use the taxpayer names, but those are taxpayer names in the public record. There are violations of Mr. Coons' substantive due process. The Stone v. FDIC case requires that the IRS disclose the documents it relied on. It did not do so until a few weeks before the hearing. There's a double jeopardy issue. Mr. Coons was taken out of his position. His 400 employees were taken away in February 1998. That, those charges concerning his alleged misuse of his government computer on the Internet were then used a year and a half later to support his demotion. The government, when they took him out of his position, was required to state the basis for his action being taken against him. Instead, they put nothing in the record to support taking him out and transferring him, moving him around the country from place to place. And that gave rise to an increase in his physical and mental, eventually depression was caused, and panic attacks and a host of other stress-related exacerbation of his existing history of severe abdominal pains and gastrointestinal disorders. There is a issue of fact as to whether or not those medical conditions were permanent in nature or temporary in nature. His doctor's report said that the plaintiff was not a person with a disability, right? That that's not a disability. What's your response to that? Under the Toyota Motor Company's case, he was the person that had an impairment that substantially prevented or severely restricts the individual from doing activities which are of central importance to most people's lives. And the court What could he not do? He had a great deal of difficulty traveling. He was undergoing panic attacks at that time and could not get on a plane. They were shipping him from Washington, D.C. to Seattle to I don't think air travel is a kind of activity. If you're impaired from that, that would... Well, eating has been found... Is there anything else besides having difficulty in traveling by air? Any other ramification of this condition? That limited life activity? That's all there is, isn't it? Well, no. It has to do with his ability to work. He was shaking. He was having nightmares. He was unable to sleep. He was undergoing a considerable amount of distress. The gastrointestinal... Is there anything in the record that says he could not work? Maybe he had difficulty with his job, but there's nothing in the record that would support a finding that he could not work. It was a disputed issue of fact whether or not he could work. And the IRS can't have it both ways. Well... They say that they accommodated him. Where's the evidence that he could not work? Period. I don't mean he couldn't do this particular job, but he could not work. Where's the evidence of that? He had difficulty... Where is the evidence of that? I believe it's in the fact that he, his doctor ordered him off of work for the period June until August, and he could not work during that period of time. Off of that job for a temporary period, but that's not evidence that he could not work, period. He couldn't do that job for a limited period of time. Right. I think the ADA is different from the Rehabilitation Act. Under the Rehabilitation Act, the federal government has a much broader scope of requiring them to accommodate people with disabilities than... No, no, no. We're not talking about accommodation. I'm talking about disability. Right. Does he have a disability? That has to be accommodated. And I so far haven't found one. The doctor's report refers to the severe abdominal pains and the gastrointestinal distress as well as the depression and the panic attacks and the shaking and the nightmares and the other things that made it very, very difficult for him to function during that period of time. And then the IRS recognized that. They said that they immediately offered him travel restrictions and other accommodations to accommodate him. They cannot have it both ways. They cannot say both. We recognize the need to accommodate you, but you aren't disabled. That's inconsistent, and if we were allowed to... That's inconsistent. If someone is having some problems and the employer is doing something to assist with that, that doesn't necessarily mean that they're admitting that there's a disability under the Act, does it? Well, I guess there is, if we could develop the record more fully, we would be able to talk about what was going on more with Mr. Coons' physical and mental state. He had a nervous breakdown, and that was not fully developed in the record. We didn't anticipate having a case with so many disputed issues of fact being thrown out on summary judgment under Rule 56. And under COSTA and a whole line of cases, the fact of the matter is there was disputed issues of fact. The timing issue and the retaliation I also want to touch on briefly, because the assumption made by the government is that he had a one moment in time in which he engaged in protected activity. Rather than the fact of the matter, which is from 1996 on through his forced retirement in 2000, he was engaging in activity that was protected. He was requesting reasonable accommodation. He was filing complaints with the Office of Special Counsel. He brought two cases to the Merit Systems Protection Board. One of those cases, the hearing has not yet been held. The hearing is now set for sometime later this year, and the pre-hearing conference will be on October 29th. And what I would request this court is to remand the case to the district court so that we could have all of the issues fully vetted, complete discovery, and then determine whether or not these disputed issues of fact are. Even assuming that, let's assume we go with you on the timing issue. In other words, you know, the two actions are close enough in time, so an inference could be drawn that there was retaliation. But the importer has come up with, you know, an independent reason for the action, right? That's a very good question, because that. And that reason preceded, you know, all of these so-called whistleblowing activities. No, the whistleblowing activities occurred as a result of the Senate investigation into the IRS use of its powers to go after people that were breaking the tax laws. In 1996, he did not yet have a computer. He was given one in 1997. The computer that was put on his desk was someone else's computer that had pornographic materials. So this establishes pretext for a number of reasons. The IRS tried to put into the MSP record, but it was thrown out, downloaded pornographic materials that the head of the Labor Relations Department took off of his home computer during Thanksgiving a few weeks before the hearing in 1999. The administrative judge looked very carefully at the computer records and found that hundreds, specifically over 200 of those charges, had nothing to do whatsoever with Mr. Coons. What they found was 34 instances of use of his government computer for private reasons. Only seven of those had to do with very brief, a few minutes, looking at supposedly pornographic sites. We don't know who exactly did that. Mr. Coons admitted that he had some instances while he was learning how to use the Internet where he mistakenly went to a bad site. Those seven instances are de minimis in light of the fact that he went to thousands of sites as part of his job, and the 34 sites that he went to, most of them were travel, real estate, and other sites that were, although not directly related to his functions, were part of the learning curve and part of him using his government computer de minimisly for non-work-related reasons. Now, this is a man with 30 years with no prior disciplinary record, outstanding awards year after year with the IRS. It is just not credible, not believable under Berdeen, under COSTA, under any of the Ninth Circuit cases which have decided that discrimination may be inferred if you don't believe the reason that was given to support taking the man's 400 employees away, then demoting him a year and a half later, then reorganizing him out of the job, and then forcing him into retirement. I would like to reserve my last three minutes. Thank you. That's fine. Thank you. May it please the Court. My name is Abraham Simmons. I am an Assistant United States Attorney, and I do represent the defendant in Appley, in this case, Mr. John Snow, the Secretary of the Treasury. In this case, Mr. Coons challenges a demotion that he received in 1999. He challenges the decision under the Rehabilitation Act and separately under the Civil Service Reform Act. We urge that this Court affirm the decision of the District Court rejecting his claims in all respects. With respect to the Civil Service Reform Act claim, it's a very deferential standard. The standard we're looking at is substantial evidence. With respect to this case, there are no serious challenges to the actual findings of the administrative law judge. With respect to the Rehabilitation Act claims, there's both a discrimination claim and a retaliation claim. Our argument is that with respect to both claims, you need not go into the merits of the actual discipline because with respect to the discrimination claim, Mr. Coons has not demonstrated that he is, in fact, a person with a disability. With respect to the retaliation claim, which is where I will spend a bulk of my time today, that claim fails because this claim fits within that category of cases, as noted by Judge Tashima,  where an employer actually knows that he's going to take some action against an employee and that employee, after there's already some indication that there will be discipline, engages in protected activity. That protected activity in and of itself will not be enough to raise a question of fact for us to question whether or not the activity was the purpose. Counsel, I'd like you to zero in on the timeline. It seems to me that he made complaints against Taxpayer A and Taxpayer D before there was any contention that he was misusing his computer. There are a couple of things that are key here. The first thing that's absolutely key is that Mr. Coons was demoted after two separate persons were assigned to the time frame. Okay. Don't avoid that. In August of 1997 is when the first woman entered into his room and saw the first explicit cites. It was not until mid-August of 1997 that the matter gets referred to, that the matter actually gets referred to the Office of the Inspector General. I have two dates, January 16, 1997, when Coons talked to his supervisor about the problems with Taxpayer A's treatment, and in mid-1997, before August, talked about Taxpayer D. The key to those statements, Your Honor, is that there's no question that the investigation was started separate and apart from anything that had to do with those two matters. The investigations were started through the OIG through separate lines of supervisors. Well, that's very true, but to say that he wasn't engaged in protected activity until after the contentions about the computer is simply not right. I understand. I now understand what your point is. I should qualify that statement. He didn't engage in protected activity that the alleged discriminating officials knew about until after. The two claims that he brings before us, that he says that the only two matters that he claims in this case were he was being retaliated against for with respect to the Rehabilitation Act retaliation claims, are his filing of an OSC complaint and his request for an accommodation. With respect to the request for the accommodation, that did not occur until after the horse had completely left the barn. Well, I'm not so concerned about that accommodation. It's the whistleblower aspects of the case that are quite concerning, I think, counsel. Okay. With respect to the whistleblower claims, then, all we're looking at, again, Your Honor, is the substantial evidence and a very deferential standard. In that regard, the administrative judge, I think, had very explicit and very clear findings why he agreed with and rejected Mr. Koonz's claims. That's not the same as the retaliation claim where it might be a de novo standard. With respect to the whistleblower claims, all we're wondering is whether he did a good job down below in really assessing the evidence. You will find, as you read carefully the decision, that Mr. — that the administrative judge spent a good deal of time talking about why he believed certain persons were credible. He talked about each one of the times that Mr. Koonz made a statement that he thought was credible or was not credible. That is substantial evidence. And we would argue that's not — we shouldn't necessarily second-guess on the whistleblower claim the administrative judge on those credibility-type judgments. Now, with respect to — I suppose I should address a couple of other statements that were made by counsel. With respect to this idea that there was, in fact, a new defense on the whistleblower claims, that whistleblowers may not speak to the press, I think that Judge Tashima, again, has hit that one right on the head, that this is not a claim that he spoke to newspapers and therefore lost his protection that he otherwise had. The claim here that he said was that he was entitled to protection because of certain disclosures he made to the newspapers. It was clear, however, and the administrative judge's findings on page 83 through 86 of the supplemental excerpts of record were that in this case, those disclosures, Mr. Koonz had every opportunity to prove were protected disclosures, but that they did clearly include, for example, his OSC complaint, which contained detailed information about the taxpayers in this case. So that he was not entitled to protection under that area for those disclosures. Also, with respect to that same claim, it is not a new claim at all. It is not a new defense at all. The law at the time was that certain disclosures that a person seeking the protection under the Whistleblower Act needs to demonstrate that his disclosures are not specifically prohibited by law. That is by statute, and the citations by the administrative judge of Kent v. General Services at 56 MSPR. Is there any contention that what he said to the press violated the law? Absolutely, Your Honor. Now, tell me in what respect? When he spoke to the press, he had in his possession confidential taxpayer information, and he disclosed that confidential taxpayer information to the press. He didn't give any names. He didn't give any specifics to the press. Indeed, he did. And that is the finding. I'm sorry. You said, indeed, he did? Indeed, he did. Well, he didn't give any names. Well, what he attached was the his complaint with the attachments to the office of the special counsel. It's my understanding that in the actual complaint, there were names. With respect to his speech, I understand that there was a debate in the court as to whether he specifically named names, and instead of actually naming names, he said, we know who those persons are. You can figure it out if you look over into the papers, and led people to the names, giving us the suggestion that perhaps it's okay not to actually say the name, but to indicate who the person is. We would argue that the administrative judge's findings in this regard are supported by substantial evidence. These things that were attached to a public record? His office of the special counsel complaint was not a matter of special public record, as I understand it. His argument, however, is that because the matter is covered within the office of the special counsel, and there were issues that were matters of public record, that it was okay. In this regard, the administrative judge's findings control, and in this regard, we would argue that the administrative judge's findings are supported by substantial evidence. That's all we need. This is either true or it's not true. Absolutely. Sotomayor, this complaint was not public record? It couldn't have been gotten by a FOIA request? My understanding is that it's not. And if Your Honor would please, I would actually submit a supplemental briefing on that or a supplemental citation. My understanding is that one may file an office of special counsel complaint without it being public record. In this case, however, what's key is that Mr. Coons had the burden of demonstrating that he, when he made his disclosures, did not make a disclosure that was specifically prohibited by law. When he failed to do that, and he was the one with the ability to demonstrate that, because he's the one making the disclosures. When he failed to do that, the administrative judge was able to conclude after four days of hearings and 22 witnesses that, in fact, he did not make disclosures that were specifically, that he did make disclosures that were specifically prohibited by law. It seems to me that black or white, when you look at what could be disclosed and what couldn't be disclosed, it wouldn't be a matter of substantial evidence that it was black or white. I understand where you're coming from, Your Honor, but sometimes it's a question of fact as to what exactly the disclosure was. And in this case, they had hearings on that matter, and there were factual findings by the administrative judge. Also, with respect, if I'll just continue with the Civil Service Reform Act claim, I suppose it's worthwhile to take a look at page 32 to 35 of the administrative judge's decision. He does set out a clear record of how Coons, in each interview, disclosed the confidential information that was with regard to the well-known taxpayers. He also provided the copies of his OSC complaint, as I mentioned before. With respect to the former employee disclosures, the administrative judge concluded on pages 25 to 27 of his decision that Coons' disclosures were limited to activities of a former Federal employee after he left government service. There's nothing in the statute that says, you know, activity of a former employee is excluded from the Whistleblower Act, is there? In fact, Your Honor, there's nothing that says that directly, but in fact, the statute does not apply to activities of former employees doing – with ongoing wrongdoing. Any person who once leaves the government is not covered by the Whistleblower Act. The intent – Well, wait a minute. Wait a minute. Now, that's not clear either, is it? In other words, say in this case, if it is true that, you know, a former employee of the agency was improperly, you know, doing something he shouldn't have done during this prohibited period, couldn't the agency take some action? They could prohibit it from appearing before the agencies, really, right? So it is some – there is some action the agency could take to correct that. Isn't there? Yes, Your Honor. There is, Your Honor. But why shouldn't he be covered by the Whistleblower Act? Because, again, there's actions that the agency can take regardless of whether he had ever been an employee. Instead, the statute that we're dealing with, the Whistleblower Act, is not intended to create protections for that sort of activity. Instead, it's to create – it's to allow the government and the people to correct government wrongdoing, not former government person wrongdoing. Well, there might be agency action that still should be taken in the wake of the past wrongdoings of an employee who is no longer there. Yes, Your Honor. And the question in this case is whether the Whistleblower Protection Act is intended to cover that sort of wrongdoing. Instead, we have a separate set of statutory rules that apply to former employees. We have a separate set of enforcement mechanisms to ensure that there is not violation of former employee misconduct. Just as we do have separate statutes that are for criminal employees who are never – criminal persons or defendants who are never employees of the federal government. Our argument here is that if you're going to deal with the Whistleblower Protection Act, if you're going to seek protection under that specific statute, then the disclosures that you make have to do with government disclosures or government wrongdoing and not with wrongdoing of persons who really no longer have a connection with the government. In sum, there are two decisions that have been made. And, again, I'd like to emphasize our position with respect to the difference in the standard of review with respect to those decisions. When we look at the Civil Service Reform Act claims, it is important to understand the factual decisions that were being made and the nature of the four-day hearing that was conducted by the administrative judge. There were a lot of credibility issues being decided at that time. Most of those issues are not being challenged here. Most of the decisions made by the administrative judge are not being challenged here. And there's a good reason for that. The substantial evidence is a very deferential standard. And that can be contrasted, we believe, from the different sorts of decisions that this Court should make and can make with respect to the Rehabilitation Act discrimination and retaliation claims. It is important that when we look at the findings of an administrative judge, we take a step back and be sure that it's a deferential standard and that we do not do what we are entitled to do with respect to the discrimination claims or the Rehabilitation Act claims, which is review de novo. Both the administrative judge and the district judge were careful in their analysis, very careful to identify the exact claims being made. There was a lot of back and forth and changing and shifting. But if we're focused on exactly what the claim is and careful not to allow one claim to bleed into the other, it becomes very clear how the administrative judge focused and why it is that his opinion was so long and how it is that he kept the record straight. And the same with the district judge in this case. There were a lot of claims over three separate orders, making sure that we understood which claim appeared and when, whether it was exhausted, whether it actually had gone through the process and whether the evidence that was being identified in support of that claim could actually support the timing of the claim. With respect to this case, we would also emphasize that the timing is important in certain respects, as you identified, Judge Fletcher. We started off with an investigation that began from two separate supervisors referring it to the OIG at a time when none of the discriminating officials, when they referred, when it was referred, were aware that there was something going to happen. There is a letter dated February of 1988 in which it is clear that the Mr. Coons is going to be disciplined. That letter identifies the fact that he's going to go on detail and that he will not be back from detail until after the investigation is concluded and there is a decision made on what to do. There is in that letter a statement that these are serious allegations,  and this is at a time before there is any evidence that he has actually engaged in any protected activity under the Rehabilitation Act. As a result, what we have here is a case of Breeden. The plaintiff is going to need more than a simple suggestion that activity already on the train to conclusion is somehow changed as a result of his protected activity. If you have any further questions, I'd like to address them. All right. Thank you, Mr. Simmons. Thank you. I would just like to briefly address some of the issues. On the timeframe, there's two aspects of the retaliation. The retaliation for whistleblower activity concerns the issues that Mr. Coons properly raised to his supervisor and to the inspector general, which have been minimized by the government and characterized as referring to Sanchez, the regional counsel for the IRS, retiring, and then working for the party against whom he was litigating when he created the procedures for seizing the assets involved in the underlying whistleblower complaint. And that case involved much more than the general counsel's activities in intimidating the legal process and the legal department staff and the IRS employees who were all employees of the IRS, and some of them are still there. It involved a whole series of things that Mr. Coons thought were very strange and needed to be looked into. There was never an investigation into that, and that is very suspect in itself. Those events are, in writing, an IG complaint was requested by Mr. Coons' subordinate in February 1997, well before, well, Ms. Rule was sent out from Washington in March of 1997, and then his computers were confiscated in August of 1997. And the request for reasonable accommodation occurred after Mr. Coons went out on his own leave, received letters pressuring him to take disability retirement, and he requested reasonable accommodation, came back to work, filed an OSC complaint, and then filed a Merit Systems Protection Board complaint in April the following year. He was then got a proposed discipline, which was based on the same evidence. It was proposing to demote him on top of what had already been done to him, move him around the country, put him in a little cubicle with no duties and no supervisor, et cetera, et cetera. When the disciplinary action came down in August 1998, he was then, his reasonable accommodations with respect to the travel restrictions were taken away, and he was put into a job requiring travel. So the timing of the retaliation on the disability reasonable accommodation issue comes after the point in which his demotion goes into effect, and they are trying to pressure him out of the agency. Mr. Coons, for his entire career, was not running around talking to the press. He did not go to the press until April and May 1999. He went very discreetly, very politely, and you will not find the articles that mention his name in the record. The articles that are in the record consist of articles written by Mr. Coons himself. They are written by the Pulitzer Prize-winning author and investigative reporter in charge of looking into the tax problems at the IRS, David K. Johnson, concerning the change in the enforcement effort away from going after the wealthy and politically connected and focusing on the working poor and the middle class. And it is those articles that do not mention a single taxpayer by name specifically. The taxpayers' names can be gleaned from looking at Mr. Coons' complaint, because these are well-known taxpayers that are in the media a lot, and the specific tax problems that they had were vetted in the press, magazines, newspapers, radio, TV, repeatedly. It would not be difficult to find their names. MS. COONS. Counsel, was the complaint that he released picture material that shouldn't have been published to the press? MS. COONS. He didn't give the New York Times a complaint. That's an allegation that the IRS made, but the complaint, the OSC complaint, at the time he files it with the OSC, their investigations are not public record. However, the complaint became a public record when they demoted him a year and a half later, and the case went before the Merit Systems Protection Board. So the Merit Systems Protection Board file was a public record, and the entire file was contained, the OSC file was contained in the MSPB record and was released to the New York Times. The New York Times story that appeared on December 20, 1999, does name some of the taxpayers, and they may have gotten information about who to name by sitting in the hearing and by looking at that record, but those were not disclosures because those names were already in the record, and there was no charge that he was violating the law as the basis for the disciplinary action. The judge, Sue Esponte, in the middle of the hearing when we returned after the holidays in January, said that he was going to issue a decision and requested that the parties brief the issue. That is when the IRS conceded that if the issue, if the taxpayer information is in the public record, it is not part of the disclosure provisions. It's not covered by that, because the information is not disclosed. By the IRS employee, it's simply corroborated by the IRS employee. And the whistleblower law here does not require him to show affirmatively that he did not violate any other law. There is a three-prong test, and he met it. The reason why this new defense had to be created is because the judge very carefully tried to determine whether there was any other defense to whistleblower before shifting the burden to the agency to show by clear and convincing evidence that they would have taken all of these steps to ruin his career and his life, but for the alleged use of the Internet on the computer, which was a very de minimis problem in his case, but a widespread problem in the IRS where they had no written rules and no guidelines, and they put somebody into his place that had bigger problems that was passing around pornographic disks that were IRS property to other employees. So there is a lot of evidence of pretext here that the judge could look at. And if he was the Merit Systems Protection Board judge was so careful, he would have put in the record the New York Times article that he was relying on, and he would have questioned the witness himself, as he did throughout the case, on every other issue. But there just simply isn't evidence that Mr. Kuhn did anything illegal in this case. He was complying with the law and doing it in a very respectful way in light of his position. Thank you very much.
judges: Hug, B Fletcher, Tashima